UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AUTUMN CAMBRON,<br><br>                    Plaintiff,<br><br>v.<br><br>SCALE SOCIAL, INC. and RALPH D. GRAMAJO,<br><br>                    Defendants. | Case No.: 24-cv-2498-CAB-VET<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO STAY PENDING ARBITRATION**<br><br>[Doc. No. 5] |

Defendant Scale Social, Inc. ("Scale Social") and Defendant Ralph D. Gramajo ("Gramajo") filed a motion to stay this matter pending arbitration. [Doc. No. 5.] For the reasons outlined below, the Court **GRANTS** Defendant's Motion to Stay and **ORDERS** the parties to continue arbitration.

I.  BACKGROUND

   a. Allegations in the Complaint

Defendant Scale Social is a California corporation. [Complaint ("Compl.") ¶¶ 3–4.] Defendant Gramajo is a resident of Arizona and the sole officer and director of Scale Social. [*Id.* ¶ 6.] Plaintiff claims to be a model who works in the social media industry.

[*Id.* at 12.] Plaintiff entered into an agreement (the "Agreement") with Defendants to have Scale Social serve as Plaintiff's talent management. [*Id.* ¶¶ 11, 18, 22.] Plaintiff alleges that Defendants locked Plaintiff out of her social media accounts, failed to compensate Plaintiff for her recruitment efforts, and wrongfully withheld Plaintiff's profits generated from her social media accounts. [*Id.* at ¶¶ 22–49.]

On December 31, 2024, Plaintiff filed a complaint asserting five causes of action against Defendants. [*See* Compl.] Plaintiff first claims that the Agreement must be declared null and void from inception because Defendants were not licensed under California's Talent Agencies Act (the "TAA") and did not follow the TAA's requirements. [*Id.* ¶¶ 51–74.] Plaintiff next alleges that Defendants used false statements to entice Plaintiff to enter into the Agreement. [*Id.* ¶¶ 76–84.] Third, Plaintiff claims that Defendant Gramajo used photos of Plaintiff on his social media in violation of California Civil Code § 3444. [*Id.* ¶¶ 86–95.] Fourth, Plaintiff alleges that Defendants used Plaintiff's likeness for Defendants' commercial advantage without Plaintiff's consent. [*Id.* ¶ 98.] Finally, Plaintiff alleges that Defendants violated California's Business and Professions Code Section 17200 *et seq.* by engaging in unlawful, unfair, and fraudulent business acts and practices. [*Id.* ¶¶ 100–103.]

### b. Defendant's Motion to Stay Pending Arbitration

On April 4, 2025, Defendants filed a Motion to Stay Pending Arbitration, Motion to Strike Paragraph 8, Motion to Dismiss for Violation of Rule 7.1, Motion to Dismiss for Lack of Personal Jurisdiction, Motion to Dismiss for Failure to State a Claim, and Motion for More Definite Statement. [Doc. No. 5.] On June 11, 2025, the Court denied Gramajo's Motion to Dismiss for Lack of Personal Jurisdiction. [Doc. No. 24.]

Plaintiff incorporated the Agreement into her complaint. [Compl. at 23–34.] The Agreement includes an arbitration clause, which states:

> Arbitration. A cause of action arising out of this Agreement includes any cause of action seeking to enforce any provision of or based on any matter arising out of or in connection with this Agreement or the transactions contemplated by it. The parties agree to settle any dispute, action, or

> proceeding, whether in contract, tort, or otherwise, arising out of this Agreement first via mediation, and if such mediation is unsuccessful, the parties agree to binding arbitration according to the then-prevailing procedures as set forth by the American Arbitration Association, with the venue taking place in San Diego, CA.

[Compl. at 30.]

Pointing to the Agreement's arbitration provision, Defendants contend that Plaintiff consented to binding arbitration. [Doc. No. 5 at 2.] Defendants also argue that the arbitrator should determine whether Plaintiff's claims are subject to arbitration in the first instance. [Doc. No. 5-1 at 6.]

## II.   LEGAL STANDARD

The Federal Arbitration Act ("FAA") governs the enforceability of arbitration agreements in contracts. *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010). The FAA makes such written arbitration agreements "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "Because arbitration is fundamentally a matter of contract, the central or primary purpose of the FAA is to ensure that private agreements to arbitrate are enforced according to their terms." *Momot v. Mastro*, 652 F.3d 982, 986 (9th Cir. 2011) (internal quotation marks and citation omitted).

Under the FAA, an aggrieved party to a written arbitration agreement "may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in [the arbitration] agreement." 9 U.S.C. § 4. "A party seeking to compel arbitration has the burden under the FAA to show (1) the existence of a valid, written agreement to arbitrate; and, if it exists, (2) that the agreement to arbitrate encompasses the dispute at issue." *Ashbey v. Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015). Upon such a showing, the FAA "mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original). The scope of an arbitration clause must be interpreted liberally, and "as a

matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). Accordingly, a motion to compel arbitration "should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582–83 (1960).

### III. ANALYSIS

Plaintiff argues that the Agreement did not clearly and unmistakably delegate the issue of arbitrability to the arbitrator because the Agreement has conflicting provisions regarding arbitrability. [Doc. No. 22 at 3–7.] Further, Plaintiff claims that the arbitration clause does not bind the parties because of ambiguities, inconsistencies, and its unconscionability. [Doc. No. 22 at 7–14.] Defendants respond that the parties executed a valid Agreement, that the arbitration clause is not unconscionable, and that all doubts must be construed in favor of arbitration. [Doc. No. 5-1 at 4–6; Doc. No. 23 at 6.] The Court resolves these issues in turn.

#### a. Validity of the Arbitration Clause

Under the FAA, a party seeking to compel arbitration has the burden of showing that a valid, written agreement to arbitrate exists between the parties. *Ashbey*, 785 F.3d at 1323. "To determine whether the parties formed an agreement to arbitrate, courts 'apply ordinary state-law principles that govern the formation of contracts.'" *Int'l Bhd. of Teamsters v. NASA Servs., Inc.*, 957 F.3d 1038, 1042 (9th Cir. 2020) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). Pursuant to California law, the moving party must prove by a preponderance of the evidence that an agreement to arbitrate exists. *Id.* (citing *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014)).

Defendant argues that the Agreement contains an arbitration provision and Plaintiff consented to that provision by executing the Agreement. [Doc. No. 5-1 at 5–6.] The parties do not dispute that both have executed the Agreement. [*Id.*] Although Plaintiff claims that

she entered into the Agreement under fraudulent circumstances, an arbitration clause may be enforced even though the rest of the contract is later held invalid by the arbitrator. *Republic of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 476 (9th Cir. 1991).

Plaintiff replies that the parties' agreement to delegate arbitration is unconscionable. The arbitrator first decides whether the arbitration clause is unconscionable, unless the party resisting arbitration specifically references the delegation provision and makes arguments challenging it. *See Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1011 (9th Cir. 2023). Here, Plaintiff specifically references the delegation to arbitration and makes arguments against the provision. [*See* Doc. No. 22 at 4—6.]

"Unconscionability requires a showing of both procedural unconscionability and substantive unconscionability." *Ajamian v. CantorCO2e, L.P.*, 203 Cal. App. 4th 771, 795 (2012). "The procedural element of unconscionability involves oppression and surprise." *Baker v. Osborne Dev. Corp.*, 159 Cal. App. 4th 884, 895 (2008). "Oppression arises when the parties have unequal bargaining power, leading to no real negotiation and lack of meaningful choice." *Id.* "Surprise may arise when challenged terms are hidden in a prolix printed form drafted by a party in a superior bargaining position." *Id.* (internal quotation marks omitted). "The substantive element of unconscionability focuses on the actual terms of the agreement and evaluates whether they create 'overly harsh' or 'one-sided' results, that is, whether contractual provisions reallocate risks in an objectively unreasonable or unexpected manner. To be substantively unconscionable, a contractual provision must shock the conscience." *Id.* at 894 (internal quotation marks and citation omitted). Plaintiff argues the delegation provision is unconscionable because the arbitration clause conflicts with other language in the agreement, that she unknowingly relinquished her rights to pursue resolution in court, and the parties had unequal bargaining power. [*Id.* at 5—6, 12—13.]. The Court addresses these arguments below.

First, Plaintiff argues that the arbitration clause is not valid since the Agreement contains conflicting clauses regarding arbitration, and that any ambiguities must be resolved in favor of Plaintiff. [Doc. No. 22 at 7—14.] Plaintiff points out that the

Agreement explicitly requires the parties to bring "all legal actions" in a California court of law, not through arbitration. [*Id.* at 8.] In relevant part:

> All legal actions relating to this Agreement shall be brought in the state or federal courts located in the State of California. Each party knowingly and voluntarily agrees to San Diego, California as the venue for any such action, suit, or proceeding.

[*Id.* at 9]. Plaintiff claims that this language in Section 19 of the Agreement conflicts with the arbitration provision found in Section 18 of the Agreement, and the Court should decide arbitrability instead of the arbitrator. [*Id.* at 13].

Defendant responds that by incorporating the then-prevailing procedures as set forth by the American Arbitration Association (the "AAA") in the Arbitration Agreement, the Agreement intended for the arbitrator to "have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." [Doc. No. 5-1 at 7]; *see* American Arbitration Association Commercial Arbitration Rules and Mediation Procedures § R-7 (AAA 2022). The Ninth Circuit, as well as the California Court of Appeal, has held that language in an agreement stating that disputes shall be resolved with the then-current rules of the AAA "incorporates the applicable rules of the AAA into the terms of the contract." *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1122 (9th Cir. 2008); *O'Hare v. Mun. Res. Consultants*, 107 Cal. App. 4th 267, 280 (2003). Here, the Agreement incorporates the AAA by directly referencing the AAA. [*See* Compl. at 30.] Because the Agreement incorporates the AAA by direct reference, the Court finds that the parties agreed to the AAA's rules and the arbitration clause does not conflict with the rest of the Agreement.

The Ninth Circuit has explained that the "incorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015). While *Brennan* carves out exceptions for certain consumers or particularly complex contracts, the Court finds that neither exception applies. Plaintiff next argues that *Brennan* should not apply because

Plaintiff was not a sophisticated party. However, Plaintiff pleads that she had previously worked with a manager in the industry. [Doc. No. 22 at 2.] Regardless of whether Plaintiff was a sophisticated party or not, the *Brennan* court specifically noted that its holding could apply to unsophisticated parties. *See Brennan,* 796 F. 3d at 1130. The Court does not find the straightforward arbitration provision unconscionable as it clearly incorporates the AAA and does not shock the conscience.

Finally, Plaintiff replies that the parties had unequal bargaining power because Plaintiff was surprised to find out about the arbitration clause. In establishing unconscionability, courts in California consider the length of the proposed contract and the length and complexity of the challenged provision. *Ronderos v. USF Reddaway, Inc.*, 114 F.4th 1080, 1090 (9th Cir. 2024). The Court does not find Plaintiff's surprise about the contents of a 14-page Agreement credible. The relatively short and clear Agreement plainly acknowledged that Plaintiff had the right to consult an attorney directly under the text of the arbitration clause, yet Plaintiff chose to proceed without an attorney. The Court does not find apparent oppression and surprise that rises to the level of unconscionability.

Plaintiff's unconscionability challenge fails at this juncture. For the reasons stated above, Defendant has shown by a preponderance of evidence that (1) the parties validly executed the Agreement and (2) that it evidences a clear and explicit intention to arbitrate. *See Ashbey*, 785 F.3d at 1323.

### b. Scope of the Arbitration Clause

Regarding the scope of the arbitration clause, Plaintiff argues that the parties have not agreed to submit any claims to arbitration because the parties agreed to first bring all legal actions in state or federal court. [Doc. No. 22 at 14.] "[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.–Alabama v. Randolph*, 531 U.S. 79, 91 (2000). If there is ambiguity as to the scope of the arbitration clause, the Court must resolve the ambiguities in favor of arbitration. *See Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 62 (1995).

The parties have incorporated the AAA's arbitration rules. Controlling law makes

clear that the issue of arbitrability is delegated to the arbitrator. *See Brennan*, 796 F.3d at 1130. Resolving any ambiguities in favor of arbitration, the Court finds Plaintiff's claims within the scope of the Agreement's arbitration clause.

## IV. CONCLUSION

Defendants' motion to stay pending arbitration is **GRANTED**. *See* 9 U.S.C. § 3. At the status conference on June 25, 2025, the parties confirmed that they had begun arbitration with an arbitrator and that arbitrator had stayed the arbitration proceedings until this Court could rule on arbitrability. The Court **ORDERS** the parties to resume arbitration in the manner provided for in the Agreement. *See* 9 U.S.C. § 4. Accordingly, Defendant's motion to dismiss the complaint is hereby **DENIED AS MOOT AND WITHOUT PREJUDICE.** The Court deems all other pending motions **WITHDRAWN** subject to refiling if the matter is not resolved in arbitration.

It is **SO ORDERED**.

Dated: July 8, 2025

Hon. Cathy Ann Bencivengo
United States District Judge